

E. K. Wade (Pro Se)
542 North Civic Drive, Apt. D
Walnut Creek, CA 94597
(925) 323-1578
**ekpeactime@aol.com**

**Attorney for Plaintiff**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **E. K. Wade** | ) **Case No. C 08-0021 MEJ/MJJ** |
| **Plaintiff,** | ) **AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **vs.** | ) **(Employment Discrimination)** |
| **Elaine Chao, Secretary of Labor**<br>**U.S. Department of Labor** | ) **Date: March 11, 2008**<br>**Time: 9:30 A.M.** |
| **Defendants.** | **Place: Courtroom 11, 19th Floor**<br>**Before: Honorable Martin J. Jenkins** |

## I. STATEMENT OF FACTS

Plaintiff E. K. Wade (hereinafter "Plaintiff") brought this action against Elaine Chao, Secretary of the U.S. Department of Labor (hereinafter "Defendant.") for Defendant's conduct in violating Plaintiff's Title VII rights and 501 Rehabilitation rights to employment without discrimination. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff now moves for summary judgment and/or summary adjudication of the issues to each cause of action.

On **November 27, 2001**, Plaintiff filed a Step 1 Grievance, alleging discrimination in untimely merit-pay promotion to GS-11; and on **July 3, 2002**, Plaintiff re-filed the grievance demanding arbitration to the union, which simply abandoned Plaintiff and refused to arbitrate.

On **July 25, 2001**, Plaintiff blew the whistle on Compliance Officer (CO) Jesus Alvarez for distributing sexual/racial emails; and on **September 26, 2001**, Defendants Gilliland, Luevano, and Martin denied Plaintiff's timely merit-pay promotion to GS-11.

On **October 10, 2001**, Defendant Angel Luevano and Martin conspired and forced Plaintiff to move to a cubicle with his back to all Compliance Officers to discipline him for using profanity against a female co-worker CO Linda B. Smith.

On **November 27, 2001**, Plaintiff filed a Step 1 Grievance alleging that he was not assigned cases outside of California as other COs from **September 26, 2000** to on or about **November 27, 2001**.

On **January 4, 2002**, ADD Martin sent Plaintiff on a demeaning assignment to Reno, Nevada; and from **July 25, 2001** to **February 2002**, ADD Martin deliberately withheld 1 of 7 Complaint Investigations to Plaintiff, knowing he needed to have completed one for consideration of a GS-11 promotion.

On **May 19, 2002**, Plaintiff filed a Congressional Inquiry with John Dolittle's office regarding discrimination in promotion to GS-11, lack of equal training, and unequal treatment in assignments based upon his race, disability, and whistle blowing activity.

On **July 3, 2002**, Plaintiff re-filed Step 1 Grievance for untimely non-promotion to GS-11. Plaintiff demanded arbitration, but union refused to arbitrate.

On **July 16, 2002**, Defendants finally awarded Plaintiff his GS-11 promotion (10 months in arrears); on **August 7, 2002**, Plaintiff emailed DD Luevano requesting reasonable accommodations, which Luevano denied; and on **October 6, 2002**, Plaintiff filed an informal 503 discrimination complaint based upon race, disability, and retaliation.

On **December 4, 2002**, Plaintiff filed a formal 503 discrimination complaint based upon race, disability, and retaliation; and on **December 19, 2002**, Plaintiff requested a formal hearing before the EEOC, which canceled Plaintiff's claim due to mail delay and statute of limitations.

On **August 1, 2003**, Defendants Smitherman and Martin denied Plaintiff his timely merit-pay promotion to GS-12, alleging Plaintiff had "issues in writing statistical analyses." And, on **August 5, 2003** Plaintiff requested reasonable accommodations from RD Smitherman to transfer from ADD Martin's module because of increased stress brought on by Defendant Smitherman, Martin, and Gilliland's failure to grant Plaintiff systemic discrimination training, equal work assignments, continuous retaliation for filing numerous EEO complaints and whistle blowing. RD Smitherman denied Plaintiff a second time.

On **August 19, 2003**, Plaintiff filed an informal EEO complaint.

On **January 13, 2004**, Plaintiff ADD Martin demanding promotion to GS-12; on **January 31, 2004**, Defendant Gilliland, Smitherman, and Martin denied Plaintiff merit-pay promotion to GS-12 on the pretext that Plaintiff lacked statistical analyses writing skills; and on **February 22, 2004**, Plaintiff went out on disability for exacerbated stress due to management's egregious conduct in denying him his timely merit-pay promotions

twice in a span of 3 years, discriminating in training, retaliation, and unequal assignments.

On **February 25, 2004**, Plaintiff filed a Workers' Compensation Claim, which Defendants denied Plaintiff; and on **March 24, 2004**, Plaintiff requested and received 80 hours of Advanced Sick Leave based upon Dr. Heckman's diagnosis (Plaintiff's physician).

On **May 3, 2004**, Plaintiff requested 160 hours of Advanced Sick Leave (the balance allowable under Defendant's regulations and the Collective Bargaining Agreement); and on **May 5, 2004**, Defendant RD Gilliland denied Plaintiff's request (based upon Dr. Heckman's diagnosis) and said, "Your injury (stress) does not rise to the level of say a broken arm or cancer." Yet, in **2003**, RD Gilliland granted CO Richard Gaytan (Hispanic) the full 240 hours when CO Gaytan's basis was the same as Plaintiff's – stress from PTSD. (Retaliation, conspiracy, and Disparate Treatment)

On **May 6, 2004**, Plaintiff requested reasonable accommodations from ADD Alice Young. ADD Young denied Plaintiff's request saying that since ADD Martin had retired, there was no issue; and Plaintiff filed an EEO complaint with the U. S. Office of Special Counsel alleging discrimination in reprisals for filing numerous EEO complaints, grievances, and appeals regarding his untimely merit-pay promotions (GS-11 – 10 months late); and no GS-12 – from July 16, 2003 to resignation October 11, 2004), denial of equal training, and assignments.

On **May 14, 2004**, Plaintiff appealed Defendant RD Gilliland's decision to Director Charles James, in Washington, DC, to overturn RD Gilliland's denial of Advanced Sick Leave. On that same date, Director James called Plaintiff on his cell

phone and said, "You're pissing me off." (Retaliation, conspiracy, and disparate treatment)

On **May 27, 2004**, Plaintiff filed an EEO complaint with the U. S. Office of Special Counsel alleging denial of Reasonable Accommodations.

On **June 5, 2004**, Plaintiff filed an EEO complaint with Veterans Employment and Training Service.

On **June 12, 2004** and **June 30, 2004**, COs Batiste and Roberts signed affidavits in Plaintiff's complaint (Case No. 03-09-171) and lied when they swore that they had neither applied for nor received reasonable accommodations to transfer to another Module.

On **July 23, 2004**, ADD Sarah Nelson snapped at Plaintiff, threw his document at him, and said, "If you had done the CA (Conciliation Agreement) properly, then I would not have to make the revision." On **July 28, 2004**, Plaintiff quickly applied for disability retirement; and on **August 1, 2004**, Plaintiff sent an Express Letter to Secretary Elaine Chao regarding continued harassment, intimidation, and retaliation against him. Subsequently, Secretary Chao never responded or even acknowledged Plaintiff's Express Letter. (Retaliation and conspiracy)

On **August 2, 2004**, ADD Young and Director James denied Plaintiff request for reasonable accommodations; and Plaintiff wrote his physician, Dr. Stephen Heckman, regarding his deep shift in mood caused by Defendant's egregious conduct; and his ultimate decision to seek disability retirement.

On **August 6, 2004**, Plaintiff filed an EEO complaint alleging discrimination in denying reasonable accommodations and Advanced Sick Leave.

On **August 11, 2004**, Plaintiff filed an EEO complaint alleging discrimination in disparate treatment, harassment, and intimidation; and on **August 28, 2004**, Plaintiff filed an EEO complaint with Defendant's Office of Inspector General alleging hostile work environment harassment and/or retaliation for whistle blowing.

On **September 6, 2004**, OIG sent Plaintiff a letter saying they would not intervene regarding Plaintiff's hostile work environment harassment complaint; and Plaintiff received signed declarations that he put into the office mail boxes of six of his co-workers. Compliance Officers Smith, Alvarez, Batiste, and Roberts refused to complete the questionnaires.

On **September 17, 2004**, Defendants ADD Nelson and ADD Bonnie Corley sanctioned and conspired with Compliance Officers Berlene Roberts, Kathyann Batiste, and Jesus Alvarez to lure Plaintiff into conference room to harass, demean, humiliate, and intimidate Plaintiff for filing an EEO complaint.

On **September 27, 2004**, Plaintiff received an "acceptable level of competence" work performance rating; and on **October 7, 2004**, Plaintiff received a proposed 14-day Suspension from ADD Nelson.

On **October 11, 2004**, Plaintiff resigned is position; and on **October 12, 2004**, OASAM's Human Resources Manager and Roz Isleton, via conference call, called Plaintiff at his home, rejected his resignation and threatened him with AWOL if he did not return to work.

On **October 14, 2004**, Plaintiff filed yet another EEO complaint alleging continued harassment and retaliation even after his resignation, which was his Constitutional right; and on **October 18, 2004**, the FPS interviewed Plaintiff regarding

the alleged threats made to D James; and ADD Nelson, RD Gilliland, and DRD Smitherman contracted with Federal Protective Services (FPS) and Homeland Security to physically detain Plaintiff and have security to physically escort him to and from his conduction of personal business.

On **October 21, 2004,** ADD Nelson, with carbons to Roz Itelson and RD Gilliland, sent Plaintiff a letter rescinding the Notice of Proposed 14-day Suspension; and placed Plaintiff on administrative leave from the office. On or about November 5, 2004,

On **[November 10, 2004],** Plaintiff filed an EEO complaint with Defendant alleging Constructive Discharge, which continued Plaintiff's earnest EEO process. ***(Agency No. 04-09-147).***

On **November 23, 2004**, RD Woody Gilliland, with a carbon copy to Roz Itelson, sent Plaintiff a letter regarding Plaintiff's removal.

On **December 6, 2004**, EEOC – San Francisco Division issued a decision without a hearing favoring the Agency, which continued Plaintiff's earnest EEO process. ***[DOL Agency No. 03-09-171] [Hearing No. 370-2004-00343X]***

On **December 10, 2004**, Defendant removed Plaintiff from Federal service, alleging Plaintiff had threatened Director Charles James; and on **December 20, 2004,** Plaintiff applied for Unemployment benefits with the California Employment Development Department (EDD).

On **[January 9, 2005],** Plaintiff, timely appealed DOL's Removal to MSPB by explaining the things that had led to his resignation, but only in context of his Removal, for he had already resigned his position on October 11, 2004; and had already filed his Constructive Discharge complaint on November 10, 2004.

On **January 13, 2005**, Plaintiff received a letter from EDD denying him unemployment benefits with appeal rights; and Plaintiff appealed EDD's denial decision to the California Unemployment Insurance Appeals Board (CUIAB).

On **[January 24, 2005],** Defendant issued a Final Decision of EEOC December 6, 2004 Decision without a Hearing, favoring the Agency, which continued Plaintiff's earnest EEO process. ***[DOL Agency No. 03-09-171] [Hearing No. 370-2004-00343X]***

On **February 10, 2005**, Plaintiff's attorney, at that time, Lezly Crowell, timely appealed Defendant's decision to EEOC in Washington, DC. ***[DOL Agency No. 03-09-171] [Hearing No. 370-2004-00343X]***

On **[February 14, 2005],** CRC issued Plaintiff Final Decision and ruled; favoring Defendant that Plaintiff's Removal appeal to MSPB was intertwined ("mixed case") with his actions from August 2004, which continued Plaintiff's earnest EEO process.

On **February 17, 2005**, Plaintiff's attorney, Lezly Crowell, timely filed a "mixed case" appeal of DOL's decision to EEOC, which sealed Plaintiff's earnest EEO process; and should have removed ANY contentions that Plaintiff did not exhaust his administrative remedies. Thus, the EEO process, which included both the Title VII claims and the Constructive Discharge claims, was completed.**1** ***[Agency No. 04-09-147]***

On or about **[February 18, 2005],** Plaintiff's attorney, at that time, Lezly Crowell, timely appealed to the MSPB for Defendant's Removal Decision on December 10, 2004. ***[SF-0752-05-0272-I-1]***

---

[1] This represents the final steps in Plaintiff's exhaustion through the EEO process.

On **March 4, 2005**, Plaintiff met with Administrative Law Judge Deborah R. Schissell and presented her with ALL of his evidence to sustain that Plaintiff suffered exacerbated health conditions from his employer's conduct. ;

On **March 10, 2005**, CUIAB ruled that Plaintiff was involuntarily discharged from his position; and was entitled to unemployment benefits.

On **April 29, 2005**, Plaintiff received MSPB's Initial Decision regarding Notice of Removal, wherein it ruled that Plaintiff's resignation was effective October 11, 2004 – and all other activity after October 11, 2004 (i.e. Notice of Removal, etc.) was moot. At this point, Plaintiff had no intentions whatsoever to appeal his discrimination/constructive discharge claims to MSPB. In a footnote, however, MSPB counseled Plaintiff that "If it is the appellant's contention that his resignation from the agency was involuntary, the appellant must file an appeal with the Board's Western Regional Office within 30 days of the date of this decision." Here, MSPB encouraged, tricked, or lured Plaintiff into appealing the "mixed case" and to ignore Plaintiff's already-established EEO process and completion thereof. Plaintiff did not seek MSPB's assistance in his Constructive Discharge allegations.

On **[May 17, 2005],** like a fool, Plaintiff filed a "mixed case" appeal with the MSPB in Washington, DC, alleging Constructive Discharge based upon discrimination in promotion, disability, retaliation, and hostile work environment harassment. ***[CRC Case No. 04-09-147] [SF-0752-05-0272-I-1]*** At this point, according to statute (pursuant to paragraph 102 of Plaintiff's complaint), DOL should have notified MSPB that Plaintiff had already filed his "mixed case" appeal to EEOC; and to request MSPB to

dismiss Plaintiff's appeal without prejudice. DOL failed to do that. At this point, MSPB had no jurisdiction to hear Plaintiff's erroneous appeal because of DOL's failure to act.

On **September 12, 2005**, MSPB issued Plaintiff its Initial Decision on appeal of Constructive Discharge, ruling that "...he was not entitled to a hearing because he failed to raise an allegation of fact that, if proven, could establish a prima facie case that the Board has jurisdiction over the matter at issue." ***[SF-0752-05-0272-I-1]***

On **October 12, 2005**, Plaintiff petitioned the U.S. Court of Appeals for relief. [Confirmation Number 1809232965 & Pleading Number 2005003618]

On **July 25, 2006**, EEOC in Washington, DC, affirmed Defendant' decision. ***[DOL Agency No. 03-09-171] [Hearing No. 370-2004-00343X]***

Finally, on **January 17, 2007**, the U.S. Court of Appeals sustained MSPB's position that Plaintiff lacked subject matter jurisdiction; and the case was closed. ***[06-3266]***

Whether an employee was excused from exhausting grievance and arbitration procedures as set forth in Collective Bargaining Agreement (CBA) was mentioned in *Sidhu v. The Flecto Company, 279 F.3d 896 (9th Cir. 2002).* A former employee brought action against employer, under Labor Management Relations Act (LMRA), alleging breach of collective bargaining agreement (CBA). The United States District Court for the Northern District of California, J., dismissed employee's action on the ground that he failed to exhaust grievance procedures under CBA. Employee appealed. The Court of Appeals, Rawlinson, Circuit Judge, held that: (1) employee was excused from exhausting grievance and arbitration procedures set forth in CBA, based upon employer's repudiation of grievance and arbitration procedures, and (2) action was not barred under

doctrine of res judicata. In employee's repeated demands to arbitrate his grievances, Flecto maintained its position that the grievance was without merit and that the arbitration clause did not apply to Sidhu. Rather than seeking to compel arbitration, the Union filed suit under section 301 of the LMRA. This case is on point and is extremely helpful to Plaintiff's case. Plaintiff could not force his union to arbitrate, which then precluded Plaintiff from having the opportunity to appeal to the EEOC – a prerequisite for bringing any action to a U.S. District Court.

"An appeal of a final agency decision should be filed within 30 days of its receipt. An appeal to the MSPB is also available when, after 120 days, the agency has not issued a final decision. ***29 C.F.R. § 1614.302(d)(1)(iii)*** *Sloan v. West, 140 F.3d 1255 (9th Cir. 1998)* In the case at bar, Plaintiff did not file an appeal of DOL's decision with MSPB within 30 days of its receipt on February 14, 2005. Plaintiff, instead, filed his timely appeal ***[(Agency No. 04-09-147)]*** with EEOC within 30 days, according to the appeals notification chronicled in the February 14, 2005 decision. In the case at bar, Plaintiff clearly and timely filed his "mixed case" appeal with EEOC. Hence, although Plaintiff appealed his "mix case" to MSPB, on May 17, 2005, MSPB really had no jurisdiction to hear the matters according to the statute in paragraph 102.

In procedures for handling dual filings with MSPB, where a complainant files with the agency first, "If an employee first files a mixed case complaint at the agency and then files a mixed case appeal with the MSPB, the agency should advise MSPB of the prior agency filing and request that the MSPB dismiss the appeal without prejudice." ***29 C.F.R. § 1614.302*** (paraphrased by EEOC)

Plaintiff first filed a "mixed case" complaint at DOL was effective February 14, 2005. On February 17, 2005, within the 30 day statute of limitations, Plaintiff timely appealed DOL's final decision ***[(Agency No. 04-09-147)]*** When Plaintiff filed the "mixed case" appeal with MSPB on May 17, 2005, at that moment, according to the aforementioned statute, the agency was required to file and request that MSPB dismiss Plaintiff's appeal without prejudice. The agency failed to follow protocol. As a direct result of agency's failure to adhere to the statute, Plaintiff's smooth flow of the administrative process was obstructed; and by doing so the Agency and MSPB thwarted their opportunity to remedy its own mistakes before being hauled into court.

Whether exhaustion of administrative remedies is required where the actions of an agency clearly and unambiguously violates statutory or constitutional rights was mentioned in *Bustillo v. Quinlan, 972 F. 2d. 1337 (9th Cir. 1992).* Bustillo, a federal prisoner, appealed dismissal of his civil rights action without prejudice for failure to exhaust his administrative remedies. The U.S. Court of Appeals, Ninth Circuit, reversed the U.S. District Court, Central District (No. CV-90-5415 SVW) by relying upon the fact that "Exhaustion is not required if: 1) administrative remedies would be futile; 2) the actions of the agency clearly and unambiguously violate statutory or constitutional rights; or 3) the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." (citing *Lyons v. United States Marshals, 840 F.2d 202 (3rd Cir. 1988)* This case is on point; and is extremely helpful to Plaintiff's case, for DOL's actions (failure to file and request dismissal) clearly and unambiguously violated Plaintiff's statutory rights to the smooth functioning of an administrative process. But for DOL's

inactions, Plaintiff's continued progress to the U.S. District Court would not have been obstructed.

Whether an Agency's violation of a statute excuses Plaintiff's exhaustion of an administrative process was mentioned in *Jasch v. Porter, 302 F.2d 130 (9th Cir. 2002).* Jasch, a former postal employee, sued the Postmaster General under Title VII, in U.S. District Court, Northern District of California. U.S. District Judge Thelton Henderson dismissed Jasch's action for failure to exhaust administrative remedies. Jasch appealed. The Court of Appeals ruled that Jasch exhausted his administrative remedies, even though he failed to cooperate with EEO counselor because agency had the right, by statute, to dismiss Jasch's claims for failure to cooperate, but chose not to. This case is on point; and is extremely helpful to Plaintiff's case, for DOL's actions (failure to file and request dismissal), by statute, clearly and unambiguously violated Plaintiff's statutory rights to the smooth functioning of an administrative process. But for DOL's inactions, Plaintiff's continued progress to the U.S. District Court would not have been obstructed.

Whether an Agency's violation of a statute excuses exhaustion of an administrative process was mentioned in *Hall v. Lehman, Jr., 888 F.2d 130 (9th Cir. 1989).* Hall, a former employee with the Department of the Navy, appealed a dismissal of his racial discrimination claim under Title VII, wherein the District Court dismissed Hall's suit as untimely. Hall argued that his failure to file within thirty days of the arbitrator's final decision should have been excused because the Navy failed to notify him of his proper appeal rights. EEOC regulations required that the agency notify an employee of his right to file either a mixed case complaint or a mixed case appeal only if

he has raised the issue of discrimination during the processing of the action. ***29 C.F.R. § 1613.403*** However, the Court reasoned, "There is no evidence in the record that an allegation of discrimination was ever presented to the agency before it decided to terminate Hall." Hence, the Court of Appeals affirmed the district court's dismissal. Although the Court dismissed Hall's case, if Hall had presented his allegations in a timely fashion, the Court would have strongly considered excusing Hall's exhaustion requirements. This case is on point; and is extremely helpful to Plaintiff's case, for DOL's actions (failure to file and request dismissal), by statute, clearly and unambiguously violated Plaintiff's statutory rights to the smooth functioning of an administrative process. But for DOL's inactions, Plaintiff's smooth function of an administrative process would not have been obstructed.

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." ***U.S.C.A. Const. Amend. XIV, § 1***

In the case at bar, Plaintiff exhausted ALL avenues available to him through the grievance process to the extent that Plaintiff's union refused to arbitrate his unfinished issues relating to his promotions to GS-11 and GS-12. The *Sidhu* case clearly excuses Plaintiff from exhausting his administrative remedies to the extent that his union precluded him from the smooth functioning of a properly elected administrative process as they related to his movements for relief through the EEO process. Secondly, *Bustillo,*

citing the Lyons case clearly demonstrates that the agency and MSPB prevented Plaintiff's smooth functioning of a properly elected administrative process when it failed to properly, and by law, dismiss the appeal even before consideration of jurisdiction. Thirdly, if the Court in *Bustillo* excused his exhaustion, based upon the same statute, then Plaintiff should be afforded the same due process. Finally, *Jasch* and *Hall's* cases provides evidence to excuse Plaintiff from exhausting his administrative remedies, for the Agency and MSPB's actions clearly and unambiguously violated Plaintiff's statutory right to have the "mixed case" appeal dismissed without prejudice, pursuant to ***29 C.F.R. § 1614.302.*** Therefore, Plaintiff has effectively exhausted his administrative remedies; and this Court does have subject matter jurisdiction to hear the merits of this case. ALL of these elements have been met.

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." **42 U.S.C. § 2000e-3 § 704(a); Burlington Northern and Santa Fe Railroad. Co. v. White 126 S.Ct. 2405 (U.S. 2006)**

To prove a prima facie case of retaliation, Plaintiff must show that: a) he engaged in a protected activity (e.g., filing a complaint with EEOC, OSC, Whistle blowing,

Congressional Inquiry, etc.); b) the employer acted adversely against the Plaintiff; and c) the protected activity was causally connected to the employer's adverse actions.

Plaintiff: a) belongs to a racial minority (African American); b) engaged in protected activity [to include whistle blowing when he reported co-worker Jesus Alvarez's abusive conduct in distributing racial and sexual emails to interoffice personnel] by filing numerous EEO complaints alleging discrimination; c) was subjected to adverse actions by Defendant to include: delay in promotion to GS-11, denial of reasonable accommodations, unfair work assignments, denial of systemic discrimination training, delay in promotion to GS-12; and d) demonstrated a causal connection to the Defendant's adverse actions.

"The Supreme Court made clear that employers are subject to vicarious liability for unlawful harassment by supervisors. Liability is premised on two principles: 1) an employer is responsible for the acts of its supervisors; and 2) employers should be encouraged to prevent harassment and employees should be encouraged to avoid or limit the harm from harassment." **Burlington Industries, Inc. v. Ellerth 118 S. Ct. 2257 (1998) and Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998).**

To sustain a prima facie case of hostile work environment harassment, Title VII holds that Plaintiff must show that: a) he is a qualified individual with a disability; b) he was subjected to unwelcome harassment; c) the harassment was based upon his disability; d) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and e) some factual bases exists to impute liability for the harassment to the employer.

In addition, in exercising the Reasonable Person Standard, Plaintiff must demonstrate: a) the frequency of the discriminatory conduct; b) its severity; c) whether it is physically threatening or humiliating, or a mere offensive utterance; and d) whether it unreasonably interferes with an employee's work performance.

Plaintiff: a) is a qualified disabled American veteran with a known disability; b) was subjected to unwelcome harassment when his supervisor, Defendant Sarah Nelson harassed him by throwing his document at him; and conspired with Plaintiff's co-workers Kathyann Batiste, Berlene Roberts, and Jesus Alvarez by luring Plaintiff into conference room to intimidate, harass, and demean him for filing numerous EEO complaints with the intent to enrage him to the extent that he would "snap," enraging him to say, "Negroes…that's what I'm dealing with;" c) was harassed based upon his disability; d) was harassed sufficiently to alter the terms, conditions, and privilege of employment to the extent that he subsequently resigned; and e) factual bases exist to impute liability for the harassment to the employer.

Plaintiff: a) belongs to a racial minority and is a qualified individual with a disability (African American, disabled); b) was subjected to unwelcome harassment; c) was harassed based upon his disability; d) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and e) numerous factual bases exists to impute liability for the harassment to the employer.

In addition, in exercising the Reasonable Person Standard, Plaintiff has demonstrated: a) the frequency of the discriminatory conduct; b) its severity; c) whether it was humiliating; and d) whether it unreasonably interfered with Plaintiff's work performance.

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." ***42 U.S.C. § 2000e-3 § 704(a); Burlington Northern and Santa Fe Railroad Co. v. White* 126 S.Ct. 2405 (2006)**

"Whistleblower protection laws prohibit reprisal against federal employees who "reasonably" believe that their disclosures show "a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a specific and substantial danger to public health and safety." Disclosures can be made to any person, and internal disclosure (within the government agency) is not required." ***Whistleblower Protection Act of 1989***

"[A] tortious constructive discharge is shown to exist upon proof that: (1) the employee's resignation was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied." ***Martin v. Sears and Roebuck, 899 P.2d 551, 553 (1995)***

Plaintiff asks this Court to take judicial notice that: (1) his resignation was induced by action and conditions that are violative of public policy from CUIAB's reversal of EDD's denial of unemployment benefits wherein the CUIAB ruled that Plaintiff's stress conditions perpetrated by Defendant's egregious conduct and violation of Title VII; (2) the CUIAB stated in their ruling that a reasonable person in Plaintiff's position would have resigned their position; (3) the Defendant had actual and constructive knowledge through Plaintiffs numerous appeals for help through his union, EEO complaints, and Congressional Inquiries and the impact they had upon Plaintiff; and (4) the situation could have been remedied had Defendant addressed each of Plaintiff's concerns/complaints/Congressional Inquiries. All of these elements have been met.

"Each agency shall maintain a continuing affirmative program to promote equal opportunity and to identify and eliminate discriminatory practices and policies. In support of this program, the agency shall: Make reasonable accommodation to the known physical or mental limitations of qualified applicants and employees with handicaps unless the accommodation would impose an undue hardship on the operation of the agency's program; (9) Reassign, in accordance with 1614.203(g), non-probationary employees who develop physical or mental limitations that prevent them from performing the essential functions of their positions even with reasonable accommodation;..." ***29 C.F.R. § 1614.102(a)(8-9)***

"The Rehabilitation Act prohibits discrimination on the basis of disability in programs conducted by Federal agencies, in programs receiving Federal financial assistance, in Federal employment, and in the employment practices of Federal contractors. The standards for determining employment discrimination under the

Rehabilitation Act are the same as those used in Title I of the Americans with Disabilities Act. Section 501 requires affirmative action and nondiscrimination in employment by Federal agencies of the executive branch. To obtain more information or to file a complaint, employees should contact their agency's Equal Employment Opportunity Office." ***501 Rehabilitation Act of 1973***

"'...no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under' any program or activity that either receives Federal financial assistance or is conducted by any Executive agency or the United States Postal Service." ***504 Rehabilitation Act***

To prove a prima facie case of Rehabilitation Act discrimination, Plaintiff must show that: a) he has a known disability; and b) he was denied or excluded from a benefit or subjected to discrimination under any program or activity receiving Federal financial assistance solely by reason of his handicap.

Plaintiff: a) has a mental impairment (Post Traumatic Stress Disorder) from the Vietnam War, which b) substantially limits one or more of his major life activities (i.e., emotional numbness, severe depression, extreme anxiety, lack of trust in others, headaches, irritability, and outbursts of anger), c) has a record of such impairment issued from the Department of Veterans Affairs at 70%, d) accepted Equal Opportunity Specialist position under Defendant's veteran's preference guidelines being regarded as having such an impairment; e) was thrice denied and excluded from the benefit of reasonable accommodations under Rehabilitation Act program on the basis of his handicap, which precludes Defendant from discrimination in providing reasonable

accommodations; and f) was not given the right to transfer to another Module to receive adequate systemic discrimination training. ALL of these elements have been met.

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; of the right of the people peaceably to assemble, and to petition the Government for a redress of grievance." ***U.S. Const. amend. I***

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein thy reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." ***U.S. Const. amend. XIV, § 1***

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in

this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." ***42 U.S.C. § 1985(3)***

"Under federal law, 'the limitations period accrues when a party knows or has reason to know of the injury' which is the basis of the cause of action. Kimes' complaint reveals that he learned of the alleged conspiracy that deprived him of his constitutional rights in mid-June 1994. The complaint, filed in September 1994, alleges several times that Kimes had no knowledge of the alleged conspiracy between Judge Stone and the Attorney Defendants while it was occurring, and nothing in the complaint reveals that they 'should have known' about it before June 1994. Thus, Kimes complaint does not reveal that his § 1983 claim against the Attorney Defendants is barred by the statute of limitations.'" *Kimes v. Stone, 84 F.3d 1121 (9th Cir. 1996)*

"To state a cause of action under civil rights statute affording civil remedy for conspiracy to deprive person or a class of persons of equal protection of laws or equal privileges and immunities, plaintiff must claim some racial, or perhaps otherwise class-based, invidiously discriminatory animus." ***42 U.S.C.A. § 1985(3)*** *Schuman v. State of Cal., 584 F.2d 868*

A claim for relief under ***42 U.S.C. § 1985(3)*** requires a plaintiff to allege (1) a conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities

under the laws, and (3) an act in furtherance of the conspiracy (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983).*

The Supreme Court has also construed ***Section 1985(3)*** to require the plaintiff to show that the deprivation of the right was motivated by some racial or other class-based invidious animus. *Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).*

In the instant case, Defendant Elaine Chao, 'within the scope of their employment,' conspired to deprive Plaintiff freedom from retaliation, freedom of speech to complain, and equal protection of the laws, based upon his race and disability, and age pursuant to ***42 U.S.C. § 1985(3)***. All of these elements have been met.

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." ***42 U.S.C.A. § 1985(2)***

In the instant case, Defendants Elaine Chao, Charles James, Woody Gilliland, DD Angel Luevano, ADD Sarah Nelson, ADD Bonnie Corley, and COs Kathyann Batiste, Berlene Roberts, and Jesus Alvarez conspired to harass, intimidate, and demean Plaintiff with the intent to deny Plaintiff his freedom to equal protection law rights to file EEO complaints without duress.

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." **Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.**

"A trial court ruling on a motion for summary judgment in a case such as this must be guided by the New York Times ***'clear and convincing'*** evidentiary standard in determining whether a genuine issue of actual malice exists, that is, whether the evidence is such that a reasonable jury might find that actual malice had been shown with convincing clarity." ***Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986)***

Whether direct evidence was necessary to sustain a judgment of discrimination in a mixed motive case was mentioned in *Desert Palace, Inc. v. Costa, 123 S.Ct. 2148 (2003).* In this case, a female former employee sued former employer for gender discrimination and sexual harassment under Title VII. The United States District Court for the District of Nevada, David W. Hagen, J., dismissed harassment claim and entered judgment on jury verdict in favor of employee on discrimination claim. Employer appealed. The United States Court of Appeals for the Ninth Circuit, *268 F.3d 882,* vacated judgment. On en banc rehearing, the Court of Appeals, 299 F.3d 838, reinstated the judgment. Certiorari was granted. The United States Supreme Court, Justice Thomas, held that direct evidence of discrimination is not required in order to prove employment discrimination in mixed-motive cases under Title VII, abrogating Mohr v. Dustrol, Inc.,

306 F.3d 636, Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, Trotter v. Board of Trustees of Univ. of Ala., 91 F.3d 1449, Fuller v. Phipps, 67 F.3d 1137.

Judgment affirmed.

## II. DOL ADMITS ITS CONDUCT

The facts giving rise to these causes of action are undisputed. DOL does not dispute that they either contributed to the egregious conduct or failed to act upon each and every cause of action to the extent that Plaintiff filed numerous complaints and Congressional Inquiries to no avail.

## CONCLUSION

For the foregoing reasons, Plaintiff is entitled to summary judgment. If the Court finds that summary judgment cannot be granted, Plaintiff requests respectfully that the Court grant summary adjudication of such issues its finds without substantial controversy.

Respectfully submitted,

**Dated this 6th day of February 2008**

E.K Wade

**E. K. Wade (Pro Se)**
**Attorney for Plaintiff**
**542 North Civic Drive, Apt. D**
**Walnut Creek, CA 94597**
**(925) 323-1578**
**ekpeactime@aol.com**